This video was made in Cooperation with the U.S. Embassy in the Philippines.  Thank you for watching. May it please the Court. Nice to see you again. Again, I'm Dan Aleko. I represent Securus. I'm for Greg McConnell. Securus is the appellant in this case as well. This appeal is very similar to the other one, the same patent. I think largely the same issues are in play. I'm going to go over them, but if you have any questions, let me know. We will. There are instances here where the Board, again, abdicated its responsibility to actually provide its reasoning and develop and explain its opinions. Just as it did in the 1992 appeal, it took a whole host of dependent claims and basically said, we've reviewed everything. Here's our opinion. Here's our conclusion. Such findings do not comply with Cutsforth and this Court's precedent. It again adopted new arguments from the petitioner's reply or added new arguments and never gave Securus a full and fair opportunity to respond. The same motion to amend was filed in this case, so the same issues were in play there. The Board issued the same decision in both cases on that issue. The Board, with respect to the problem, the Cutsforth problem, reviewed Claims 17, 18, 31, 33, 34, and 35, and in a conclusory fashion said they were unpatentable after reviewing all of the documents. It doesn't comply with Cutsforth. It did the same thing with the pending claims 2, 10, 11, 13, 22 through 24, 27, 29, and 30. It didn't even summarize the parties' opinions with respect to these claims. Just a single paragraph, we've reviewed everything. We find that they're unpatentable. Claim 6, again, the Board just issued a conclusion. We do not agree with the patent owner after it reviewed our arguments. We agree with the petitioner's opinion. It never explained the basis for its opinions. This decision in the 1993 appeal came out the same day as the 1992. There's the same timing problem. These are all pre-Cutsforth, pre-Mogul oil, or pre- Magnum oil tools case. The Board also adopted new arguments from the petitioner's reply. As you know, the Board must base its decision on arguments that were advanced by a party and to which the opposing party was given an opportunity to respond. GTL had the burden of making the right arguments in its petition. It shouldn't get a second shot at that in a reply. Securus responded and said, there's a problem here. The claim shouldn't be construed as you construed it. For example, with the graphical timeline issue, GTL shouldn't get to recraft its position in response to that. It should consider the different alternatives in its petition and be bound by them. Can we go back to the Cutsforth issue? Yes. Alright, let's assume for the moment that we conclude that you're right. The Board didn't really explain its basis. It just said, we promise we've looked at the entire record and we conclude the claims are unpatentable, period. What if the Board had said, we adopt the position and explanation of the petitioner? See pages 11-15 of the petition, period. Would that be good enough under Cutsforth? I believe that Cutsforth mentioned that issue and I think it would have helped. I don't think that it would have solved the problem completely. Why not? We have a hundred claims we're dealing with here. Do you want the Board line by line, dime by dime, claim one through a hundred, setting out three paragraphs of analysis for each claim? That's not the rule either. I agree with that, but I think it should explain which portions of the petitioner's arguments it agrees with and why it agrees with them. It should just adopt them. I don't think it needs, that would require very, very long opinions about each claim. I think that there is some balance, but just saying we agree with the petitioner is not the right answer. Isn't that this hypothetical you're talking about? I think that that is essentially what happened with respect to claim six. Do you agree with that? Where the Board said specifically that it agreed with GTL's position? I think you're right. I think you're right about that. I don't think that's good enough. I think it needs to explain why it agreed with GTL's position. Again, I don't think it needs to elaborate on that in excruciating detail. What if GTL's position is like one paragraph in its petition and that paragraph is enough to cover whatever is in the dependent claim? Why wouldn't that be enough? So the hypothetically proposing GTL actually spelled out in its petition in a sufficient manner. So where the petition in a sufficient manner explains a basis for why a claim would be obvious or anticipated and then the Board says we agree with the petitioner. Well, I think there's a notice issue of perhaps we have the patent owner has the right to know exactly what the Board thought. What if they said we agree with the petitioner for the reasons the petitioner stated? I mean if it's as simple as that then perhaps that would be sufficient. But I think it does lend itself to the problem of adopting arguments from a petition that are insufficient on their face and I think the Board does have a duty to review those arguments and to issue opinions that are independent of what the petitioner made. Well, I think you're right about the first part of that sentence but to the extent that the Board says we've reviewed this analysis and we agree with it, we adopt it as our analysis, why isn't that sufficient? It may be depending on the circumstances. I don't want to give a bright line rule that it's always going to be okay. I don't think it's okay in this case with respect to Claim 6 but in a hypothetical sense there could be a circumstance where that's enough. With respect to Claim 1, the Board adopted arguments regarding the combination of Anders and Patterson that were just never advanced by GTL in its petition and Securus pointed out the fact that GTL failed to support its combination with anything more than conclusory statements. Its expert I think even said the ARC could be combined and the Board well anyway, the expert said they could be combined. There wasn't even an assertion that they would or should be combined. That's insufficient to show motivation to combine. And the Board's ultimate finding that a module could be software or hardware and there would be a motivation to combine the references, GTL never made that and the Board adopted it or came up with it independently at some point thereafter when Securus just never had an opportunity to respond to it. And again as I explained in my rebuttal to the last, in the last oral argument, there's no issue of waiver here because Securus did not have an opportunity to respond. It didn't have the right to file a motion to strike or to answer a reply or introduce new evidence. And these are expedited proceedings. What about Belden v. Burdek from the other side? That opinion discusses how the patent owner, once it receives something in the reply that it really thinks it's important to respond to it or to strike, then the patent owner should be activated and needs to be a little proactive to make an attempt, however it might be, through the potential available options to take action. Well I think in that case, that case is a little bit different, but I think Securus did everything it was required to do by objecting to the slots and by telling the PTAB before the oral argument, we don't agree with this, but we're going to show up to the oral argument and try to address what we can. We didn't have a fair shot. I don't think that Belden stands for the proposition that in every case the patent owner should be required to file a motion to strike when there's new evidence raised in reply. I mean, it would just encourage the proceedings to get out of control and encourage petitioners to save arguments and lay behind the log, save their best arguments for the reply. And these are streamlined processes. The patent owner shouldn't have to spend additional expense filing additional briefing when he got the patent in the first place and they're the ones with the burden, not us. If I may, I adopt my prior argument with respect to the motion to amend from the other argument and I'm going to reserve the rest of my time for rebuttal. Thank you. May it please the court again, John Wright on behalf of the U.S. Department of Justice. First, you may not have a right to file a Zero Reply or a right to file a motion to strike, but you absolutely have the right to ask. Many parties have asked. I've asked. I've received permission to file a Zero Reply. I've received permission to file a motion to strike. And there is absolutely nothing that prevents a party from asking. With respect to the slides, I know this is going back to the 1992 argument, but I think it applies here. The board made it clear in this case, as it often does, that the slides are not part of the record. We're talking about the slides that are used at the oral hearing. And it directed the parties here to email the slides, not file them in PRPS and an objection at the last minute to the slides doesn't preserve the right to say that you didn't have the right to challenge an out-of-scope reply. With respect to the motivation to combine that secures raised in its rebuttal in the 1992 case that it raises here, I'm happy to address any concerns that the court has with respect to the motivation to combine the references and the sufficiency of that. The 222 patent here is not a technological invention. It is completely agnostic with respect to the network that's used, with respect to the communication protocol that's used, with respect to any software that is used. In fact, it doesn't even have any flowcharts that are the hallmark of the software patent. It leaves it up to the skilled artisan to implement what is effectively a list and a set of descriptions of the features in the claim. And that's it. And with respect to the art that Securus brought to the table, the art was very close to the claims. They were all directed to providing a communication system, allowing the user to monitor communications. In response to Mr. Aleko's argument, he says that the only thing the board analyzed was whether something could have been combined, not whether one of Ordinary and Scaly Art would have been motivated to make that combination. With respect to the 1993 appeal, the two pieces of art that Securus put out were the monitoring, recording, and then analyzing calls of the people working there. And then Anders, which is in the context of a prison environment, that again, has a word search algorithm that allows you to analyze keywords and put markers into a conversation. And in the course of his petition, GTL unambiguously said Patterson has each one of the elements, except for the automatic word search. But it also said that Anders has each one of the elements, including the automatic word search. And the board ultimately found that compelling. And in its final written decision, it went through and effectively agreed with GTL, with what GTL had in its position, that Anders has each one of those features. I guess that's what I was wondering, that both in the institutional decision and the final written decision, do you read them as the board concluded that Anders by itself really teaches all the different elements and functions recited with respect to the investigative tools module? And so the board wasn't really relying in any way on Patterson for that limitation. That's certainly one way to read. Okay, how do you read it? I think the board found every element in the independent claims to be present in Anders. And that's, I think, unambiguously what was in GTL's petition. It says, for each element by element, it shows where Anders describes the element. I think we have to step back and remind ourselves that KSR requires a flexible approach to obviousness. And GTL had two excellent references in 1993 petition. Maybe you don't even have to get to KSR because the board found that Anders teaches it all. I think the board did find that Anders teaches it all. And then, I guess finally... You haven't even mentioned the Hong Kong reference. I can't discuss it. Would you like me to? No, I'm sorry. So, in the end, with respect to the dependent claims that the board in its decision may have been less than clear with respect to whether it was explicitly adopting Patterner's arguments or just didn't say, again, each one of these dependent claims are simply additional features that were in the petition. GTL showed that here's where that feature is in the reference, whether it's Anders or Patterson or going back to 1992 to Brown. It's a straightforward application. It's not like cuts forth. What about in this situation? I can see that working where the board says, I find that the claims are obvious for the reasons set forth in the petition. That seems like something where you can see what the board's rationale was. But when the board just says, I read both sides' arguments and I conclude that these claims are obvious or anticipated, how do you know what the analysis was? I think you can infer from the way that the board ultimately ruled that it agreed with the petitioner in this case. You have to infer that it adopted the petitioner's reasoning. Again, these were just straightforward applications. It wasn't like cuts forth where there was I think it was a case of brushes and an electrical motor and replacing the brushes and there was a combination of references and there the board didn't say what it found compelling about the combination of references. I think on a case-by-case basis, it's something that this court wouldn't be able to evaluate. But I think this court can evaluate at least implicitly what the board did here. It's a fairly straightforward application of a list of features in the dependent claims to the references. Absent additional questions from the court, I'll yield the remainder of my time. Thank you. I mentioned Hong Kong because I found it particularly creepy. A little bit. You're interested in prison conditions in Hong Kong. Thank you. May it please the court. I just have a few points. Since we're talking about Hong Kong, I know it wasn't brought up in my affirmative arguments, but I do think there's a problem there that you've got a person of ordinary skill in the art the board finds as an engineer with three years experience, yet the Hong Kong reference is a human rights paper, something that would not be normally on this bookshelf. But isn't it just showing what the knowledge of one of ordinary skill in the art is, what the state of the art is, that there are such systems in existence, regardless of whether it was in a newspaper or article or what it was in. It was being relied upon just to show what was the state of the art. I think if that truly was the state of the art that everybody in ordinary skill in the art would have known, it would have been in a different type of publication and not in a human rights paper. All they were saying was the police state of the art. I still think there would have been some other documentation that would have been more readily accessible and within something that somebody of ordinary skill in the art would have pulled off the bookshelf. However, at different points that I think are better to make here, I think that Anders, the board might have found that Anders disclosed all of the features of the claims, but that wasn't GTL's argument. GTL argued an obviousness combination here, and the board shouldn't be able to modify that into a single source obviousness argument on its own. It's required to base its decision on what the petition and what Secures was able to respond to. Do you agree that the petition states that Anders discloses all the elements of the claim? I do not believe that is true, but I do not believe that is true, but I'm not 100% sure about that, but I believe if you checked it... What about the Clozo opinion, where apparently the patent board morphed a little bit away from what was actually asserted in the petition, and this court held, well, that institution decision was not reviewable, and likewise I think the Supreme Court said the same thing. In the end, if the institution decision is clear as to what the board's intentions are, and it defines the institution decision, then you've got to run with it. I'm not sure that the institution decision in this case reflects exactly what the opinions were in the final written decision, and I know that the burdens are much different in an institution decision anyways, so that what's said in the institution decision isn't necessarily relevant to what's in the final written decision. I did want to add one thing about the adoption of arguments and not providing a full explanation. I think the big problem with that is it doesn't provide notice of why the board rejected the patent owner's arguments. I think the patent owner is entitled to know why the board disagreed with him. Give that one more sentence. Unless you have any other questions, I will take my seat.